## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGARITA GANGADHARAN, | Civil Action No. |
| Plaintiff, | (ECF Case) |
| -against- | |
| GNS GOODS AND SERVICES, GILMER LAW FIRM PLLC, and jointly and individually GEORGE HILL, GEORGE GILMER, and KAREN DOE (Last Name Unknown) and JOSHUA DOE (Last Name Unknown), | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, by and though Plaintiff's attorney, the Law Office of Laurie E. Morrison, hereby alleges:

### NATURE OF THE ACTION

1.      This is an employment case about Defendant Employers GNS Goods And Services, Gilmer Law Firm PLLC, and their owners, supervisors and/or staff members, including George Hill, George Gilmer, Karen Doe, and Joshua Doe discriminating against, harassing and retaliating against Plaintiff/employee on a regular basis because of Plaintiff's sex, gender and legally protected complaints.  Defendants' unlawful abuse included, but was not limited to, calling Plaintiff and other Female staff members **"Bitch"** and **"Muslim Bitch"**, threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

2.      Plaintiff's claims include harassment, hostile work environment, discrimination and retaliation based on sex, gender and legally protected complaints in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., as amended ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (NYCHRL").  Plaintiff's claims further include failure to pay overtime and regular wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the New York Labor Laws ("NYLL") Art. 19 §§ 650 *et seq.*

3.     This action is against Plaintiff's former employers GNS Goods And Services (hereinafter, "Defendant GNS"), Gilmer Law Firm PLLC (hereinafter, "Defendant Gilmer Law Firm PLLC") (collectively, "Defendant Companies"), and their owners, supervisors and/or staff members, including George Hill (hereinafter, "Defendant Hill"), George Gilmer (hereinafter, "Defendant Gilmer"), Karen Doe (hereinafter, "Defendant Karen"), and Joshua Doe (hereinafter, "Defendant Joshua") (collectively, "Defendants").

## PARTIES

4.     Plaintiff, Margarita Gangadharan, is a natural person who, at all times relevant to this action, resided in Kings County, New York.

5.     Defendant Hill is a natural person who, upon information, and belief at all times relevant to this action, resided in Kings County, New York.

6.     Defendant Gilmer is a natural person who, upon information, and belief at all times relevant to this action, resided in Kings County, New York.

7.     Defendant Karen is a natural person who, upon information, and belief at all times relevant to this action, resided in Kings County, New York.

8.     Defendant Joshua is a natural person who, upon information, and belief at all times relevant to this action, resided in Kings County, New York.

2

9.      Defendant GNS is a domestic company authorized to conduct business in New York State.

10.     At all times relevant to this action, Defendant GNS maintained an office located at 300 Cadman Plaza East, 12th Floor, Brooklyn, NY 11201 (hereinafter, "Defendant GNS' Brooklyn Office").

11.     At all times relevant to this action, Plaintiff worked in Defendant GNS' Brooklyn Office.

12.     At all times relevant to this action, Defendant GNS employed 15 or more staff members.

13.     At all times relevant to this action, upon information and belief, Defendant GNS had gross operating revenues in excess of $500,000.00.

14.     At all times relevant to this action, Defendant GNS engaged in interstate commerce.

15.     Defendant Gilmer Law Firm PLLC is a domestic company authorized to conduct business in New York State.

16.     In 2016 Defendant Gilmer Law Firm PLLC was not registered with the New York State Department of State, Division of Corporations.

17.     In 2017 Defendant Gilmer Law Firm PLLC was not registered with the New York State Department of State, Division of Corporations.

18.     In 2018 Defendant Gilmer Law Firm PLLC was not registered with the New York State Department of State, Division of Corporations.

19.     In 2016 Defendant Gilmer Law Firm PLLC was not registered with the Department of State, Division of Corporations in any state.

20.     In 2017 Defendant Gilmer Law Firm PLLC was not registered with the Department of State, Division of Corporations in any state.

21.     In 2018 Defendant Gilmer Law Firm PLLC was not registered with the Department of State, Division of Corporations in any state.

22.     At all times relevant to this action, Defendant Gilmer Law Firm PLLC maintained an office located at 26 Court St #312, Brooklyn, NY 11242 (hereinafter, "Defendant Gilmer Law Firm PLLC's Brooklyn Office").

23.     At all times relevant to this action, Plaintiff worked in Defendant Gilmer Law Firm PLLC's Brooklyn Office.

24.     At all times relevant to this action, Defendant Gilmer Law Firm PLLC had 4 or more staff members.

25.     At all times relevant to this action, upon information and belief, Defendant Gilmer Law Firm PLLC had gross operating revenues in excess of $500,000.00.

26.     At all times relevant to this action, Defendant Gilmer Law Firm PLLC engaged in interstate commerce.

27.     At all times relevant to this action, Defendant Companies had 19 or more staff members.

28.     At all times relevant to this action, Defendant Companies jointly had gross operating revenues in excess of $500,000.00.

29.     Plaintiff seeks to hold Defendants liable under various legal doctrines, including without limitation, vicarious liability, strict liability, respondeat superior, aiding and abetting liability and/or other grounds.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction over the federal claims asserted herein in that they arise out of the laws of the United States.  *See* 28 U.S.C. § 1331 [Federal Questions] and 29 U.S.C. § 2617 [Enforcement].  This Court has supplemental jurisdiction over the New York State and common law claims pursuant to 28 U.S.C. § 1367.

31.     Venue lies in the Eastern District of New York pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

32.     On or around May 31, 2018, Plaintiff filed charges of discrimination and retaliation against Defendants based on sex, gender and legally protected complaints (the "Charges") in the Equal Employment Opportunity Commission ("EEOC"), which was dually filed in the New York State Human Rights Division.

33.     Upon request, Plaintiff received a Notice of Right To Sue from the EEOC, dated September 28, 2018.

34.     This action is being brought within 90 days of Plaintiff's receipt of the said Notice of Right to Sue.

35.     Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

36.     Plaintiff seeks an award of appropriate relief.


## RELEVANT FACTS

37.     Plaintiff, Margarita Gangadharan, is a Woman.

38.     Defendant GNS serves as an employment agency.

39.     On or around January 27, 2017, Ms. Gangadharan interviewed with Defendant Hill.

40.     On or around January, 2017, Defendant Hill was GNS' Director.

41.     On or around January 27, 2017, Ms. Gangadharan interviewed with Defendant Karen.

42.     On or around January, 2017, Defendant Karen was GNS' Operations Manager.

43.     On or around January 27, 2017, Defendant Karen gave Ms. Gangadharan wage forms to complete for Ms. Gangadharan to be designated a 1099 worker.

44.     On or around January 31, 2017, GNS assigned Ms. Gangadharan to work at Defendant Gilmer Law Firm PLLC.

45.     Defendant Companies hired Ms. Gangadharan to work as a paralegal.

46.     Ms. Gangadharan worked for Defendant Gilmer.

47.     Defendant Gilmer is an attorney.

48.     Ms. Gangadharan also worked for Steve Rabiz.

49.     Steve Rabiz is an attorney.

50.     Ms. Gangadharan's annual salary was approximately $10.50/hour.

51.     Ms. Gangadharan worked approximately 50 hours each work week.

52.     Defendant Companies classified Ms. Gangadharan as a 1099 independent contractor.

53.     In reality, Ms. Gangadharan was Defendant Companies' employee.

54.     Defendant Companies set Ms. Gangadharan's work schedule.

55.     Defendant Companies gave Ms. Gangadharan her work assignments.

56.     Defendant Karen (last name unknown) was one of Ms. Gangadharan's direct supervisors.

57.     Ms. Gangadharan worked for Defendant Companies approximately 5 days each work week.

58.     Ms. Gangadharan used Defendant Gilmer's computer to perform work.

59.     Defendant Gilmer Law Firm PLLC also linked Ms. Gangadharan's personal computer to the company's computer system.

60.     Because of the computer link emails and electronic communications from clients went directly to Ms. Gangadharan's personal computer, so that she could communicate with the clients directly.

61.     Ms. Gangadharan worked for Defendant Companies for approximately 1 month, approximately 40 hours each workweek.

62.     After that first month of work, Defendant Karen gave Ms. Gangadharan $400 in cash.

63.     Defendant Karen told Ms. Gangadharan that the $400 was her pay for the entire month of work performed.

64.     In reality, Defendant Companies should have paid Ms. Gangadharan $420 for each week that she worked 40 hours, for a total payment of $1806 for the month, not including overtime hours.

65.     Ms. Gangadharan asked Defendant Karen where the rest of her pay was.

66.     Defendant Karen told Ms. Gangadharan that she had to work for 1 month without being paid for all weeks that she worked.

67. Ms. Gangadharan complained that Defendant Companies still owed her ~$1406 in earned wages, not including any overtime pay.

68. On or around the end of February/beginning of March, 2017, Ms. Gangadharan had a meeting with Defendant Karen and with Defendant Hill.

69. Defendant Hill told Ms. Gangadharan that Defendant Companies could not pay her any more money.

70. Defendant Hill said it was not in the budget that Defendant Hill arranged with Defendant Gilmer.

71. Ms. Gangadharan again complained that she was still owed approximately $1406 in earned wages, not including any overtime pay.

72. Defendant Hill responded that Ms. Gangadharan was an at-will employee and that Defendant Companies could fire her at any time.

73. Beginning on or around March, 2017 until the end of April, 2017, Ms. Gangadharan worked approximately 50+ hours each work week.

74. Ms. Gangadharan worked from 9am to approximately 8pm or more each day, 5-6 days each work week.

75. Defendant Companies paid Ms. Gangadharan only $420 in cash for each week.

76. On or around March, 2017, Ms. Gangadharan told Defendant Karen and Defendant Hill that she was thankful for having the job, but that Defendant Companies need to pay her for all the hours she worked.

77. Defendant Hill responded that he could not take money out of attorney Rabiz' budget to pay Ms. Gangadharan.

78. Ms. Gangadharan performed services for attorney Rabiz as well.

79.     Defendant Hill again told Ms. Gangadharan that this is an at-will state and that she could be fired at any time.

80.     On or around April 15, 2017, Defendant Karen gave Ms. Gangadharan a new employment contract.

81.     The contract stated that Ms. Gangadharan was a W2 employee since her January, 2017 hire date.

82.     Defendant Karen and Defendant Hill told Ms. Gangadharan that she had to pay back taxes to Defendant Companies.

83.     Defendant Karen and Defendant Hill told Ms. Gangadharan that they were deducting back taxes and other payments from her paychecks.

84.     Ms. Gangadharan complained that Defendant Companies were not doing legal activities.

85.     At the end of the first week in March, 2017, Defendant Karen paid Ms. Gangadharan $420 for all the hours Ms. Gangadharan worked in that week.

86.     Defendant Companies still owe Ms. Gangadharan approximately 40 hours of overtime.

87.     On or around mid-May, 2017, Defendant Joshua had trouble clocking into Defendant Companies' electronic timekeeping system.

88.     Defendant Joshua was one of Defendant Companies' staff members.

89.     Defendant Joshua started banging on Defendant Companies' table.

90.     Jardana Dahlal, started laughing.

91.     Jardana Dahlal was one of Defendant Companies' staff members.

92.     Defendant Joshua told Ms. Dahlal to **"Shut the Fuck up, Bitch."**

93. Ms. Dahlal called Defendant Hill on the telephone.

94. On or around that same day, Defendant Hill called Ms. Gangadharan.

95. Defendant Hill told Ms. Gangadharan to sit in on a meeting.

96. Defendant Hill was present in the meeting.

97. Defendant Joshua was present in the meeting.

98. The meeting occurred on or around the same day that Defendant Hill initially called the meeting.

99. Defendant Hill said that Ms. Dahlal probably would not return to the company.

100. Defendant Hill told Defendant Joshua that he would be allowed to come back to work after taking a few days off.

101. Ms. Gangadharan told Defendant Hill that she was not comfortable working with Defendant Joshua the way that he behaved towards women.

102. Ms. Gangadharan said that there was a hostile working environment.

103. Defendant Hill told Ms. Gangadharan that New York was an employment at will state.

104. Defendant Hill told Ms. Gangadharan that she could be fired at any time.

105. On or around June, 2017, approximately 1.5 weeks after the meeting, Defendant Hill told Ms. Gangadharan that her co-worker could call her a **"Bitch."**

106. Defendant Hill said calling her a **"Bitch"** was not discrimination.

107. Defendant Hill said that it's just **"bad words"**.

108. Defendant Hill again told Ms. Gangadharan that Defendant Companies could fire Ms. Gangadharan at any time.

109.   On or around July, 2017, Defendant Companies hired 3 women to work in the Summer Youth Employment Program.

110.   One of the 3 woman, Rhonda (last name unknown) is Muslim.

111.   In July, 2017, Defendant Hill had a meeting with the 3 Summer Youth Employees and with Ms. Gangadharan.

112.   In that meeting, Defendant Hill **said to the 3 girls that even if they are called "Bitch" it is not discrimination**.

113.   Defendant Hill also looked directly at Rhonda.

114.   Defendant Hill said to Rhonda that **even if you're called a "Muslim Bitch" that is not discrimination.**

115.   Defendant Hill also said that it is not a hostile work environment.

116.   Ms. Gangadharan complained about the unlawful misconduct.

117.   On or around the end of September, 2017, Defendant Hill told Ms. Gangadharan to take a couple weeks off from work until they found a new office for her to work in.

118.   At that time, Ms. Gangadharan, Defendant Karen and Michelle (last name unknown) were the only staff members present in the office.

119.   Defendant Karen and Michelle continued to work in the office.

120.   To date, Defendant Companies have not contacted Ms. Gangadharan for future employment.


**AS FOR THE FIRST CAUSE OF ACTION**
**FOR SEX/GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII**
**(Against Defendant GNS)**

121.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

122.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of the above-named Defendants.

123.    During all times material, Defendant GNS was and is an employer within the meaning of Title VII.

124.    At all times material, Plaintiff was an employee and an individual within the meaning of Title VII.

125.    At all relevant times, Plaintiff was and is woman and a member of protected classes within the meaning of Title VII.

126.    At all relevant times, Defendants were aware of Plaintiff's sex and gender.

127.    Defendants engaged in unlawful employment practices prohibited by Title VII with behaviors including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

128.    Upon information and belief, at all relevant times, Defendants were aware of and/or condoned and/or participated in the harassment and abuse against Plaintiff.

129.    Defendants' misconduct was so severe or pervasive that a reasonable person in Plaintiff's position would find that Plaintiff's work environment was intimidating, hostile or abusive.

130.    Plaintiff reasonably believed that Plaintiff's work environment that was intimidating, hostile or abusive as a result of Defendants' conduct.

131.    Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

132.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

133.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

134.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

135.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

136.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

137.   Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, punitive damages, reasonable attorney's fees and compensatory damages from Defendant GNS under Title VII.

## AS FOR THE SECOND CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER TITLE VII
## (Against Defendant GNS)

138.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

139.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq*., for relief based upon the unlawful employment practices of the above-named Defendant.

140.   Defendants discriminated against Plaintiff in violation of Title VII.

141.   Plaintiff complained about Defendants' discrimination and harassment.

142.   In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff with misconduct, including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

143.   Upon information and belief, each and every Defendant contributed to the harassment, hostile work environment and retaliation, was aware of the harassment, hostile work environment and retaliation against Plaintiff and did nothing to resolve it and/or was complicit in the misconduct.

144.    Upon information and belief, Defendants' discrimination and harassment was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

145.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, attorneys' fees and costs, emotional pain, emotional suffering, and other non-pecuniary losses. Plaintiff has further experienced severe emotional distress.

146.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience, and lasting embarrassment and humiliation.

147.    As Defendants' conduct has been willful, reckless, outrageous, intentional and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the Jurisdictional limits of all Lower Courts.

148.    Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to Plaintiff's career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

149.    Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, punitive damages, reasonable attorney's fees and compensatory damages from Defendant GNS under Title VII.

## AS AND FOR THE THIRD CAUSE OF ACTION
## FOR FAILURE TO PAY OVERTIME COMPENSATION
## <u>UNDER THE</u> <u>FAIR LABOR STANDARDS ACT</u>

150.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

151.    This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA"), and specifically under the provisions of 29 U.S.C. § 20729 U.S.C. § 207 (a)(1), to recover from Defendant Companies unpaid overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees.

152.    The provisions of 29 U.S.C. § 20729 U.S.C. § 207 (a)(1) state:

No employer shall employ any of his employees… for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed.

153.    At all relevant times, Defendant GNS was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

154.    At all relevant times, Defendant Gilmer Law Firm PLLC was and is an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.

155.    At all relevant times, Defendant Companies employed and continue to employ workers, including Plaintiff.

156.    Plaintiff worked in excess of forty hours per workweek without lawful overtime compensation.

157.   Despite the hours worked by Plaintiff, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay Plaintiff overtime compensation.

158.   Upon information and belief, Defendants failed to accurately record, report, and/or preserve records of hours worked by Plaintiff, and Defendants also failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq..

159.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

160.   Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A FORTH CAUSE OF ACTION
## FOR UNLAWFUL FAILURE TO PAY WAGES
## UNDER THE FAIR LABOR STANDARDS ACT

161.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

162.   This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA"), as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees.

163.   Defendants did not pay Plaintiff earned wages in violation of the FLSA.

164.   Upon information and belief, Defendants failed to accurately record, report, and/or preserve records of hours worked by Plaintiff, and Defendants also failed to make, keep,

and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq..

165.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

166.     Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).


### AS AND FOR THE FIFTH CAUSE OF ACTION FOR RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

167.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

168.     This claim is authorized and instituted pursuant to the provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter, the "FLSA").

169.     Defendants violated the FLSA.

170.     Plaintiff complained about Defendants' FLSA violations.

171.     In response to Plaintiff's complaints, Defendants retaliated with misconduct including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

172.     Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff' federally protected rights.

173.     Upon information and belief, Defendants' retaliation was intentional, intended to harm Plaintiff, and was done with malice or reckless indifference to Plaintiff's federally protected rights.

174.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), entitling Plaintiff to an award of liquidated damages and such other legal and equitable relief as the Court deems just and proper.

175.     Plaintiff further seeks recovery of her attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Compensation)

176.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

177.     This Count is brought under the New York Labor Law, N.Y. Lab Law § 190, et seq. ("NY Lab Law"), and reference is made to the NY Lab Law in its entirety.

178.     At all relevant times, Plaintiff was a "clerical and other worker" within the meaning of the NY Lab Law.

179.     At all relevant times, Plaintiff was and is an employee within the meaning of the NY Lab Law.

180.     At all relevant times, Defendant Companies were and are employers within the meaning of the NY Lab Law.

181.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendant.

182.    Defendants failed to pay Plaintiff overtime wages to which they were entitled under the New York Labor Law.

183.    By Defendants' failure to pay Plaintiff premium overtime wages for hours worked in excess of 40 hours per week, they willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

184.    Due to Defendants' violations of the New York Labor Law, Plaintiff is entitled to recover from Defendants her unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### AS FOR THE SEVENTH CAUSE OF ACTION
### FOR FAILURE TO PAY WAGES
### <u>UNDER THE NEW YORK LABOR LAW</u>

185.    Plaintiff hereby repeats and realleges each allegation contained above with the same force and effect as though fully set forth herein.

186.    This Count is brought under the New York Labor Law, N.Y. Lab Law § 190, et seq. ("NY Lab Law"), and reference is made to the NY Lab Law in its entirety.

187.    Defendants did not pay Plaintiff's regular pay rate for all hours worked in a work week.

188.    Defendants did not pay Plaintiff for wages earned on a bi-weekly basis as required by the NY Lab Law.

189.    As Defendants' misconduct was also in willful disregard for the NY Lab Law, Plaintiff is also entitled to an additional amount as liquidated damages equal to one hundred

percent (100%) of the total of such underpayments found to be due under the NY Lab Law, including N.Y. Lab Law § 663.

## AS FOR THE EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NEW YORK LABOR LAW

190.    Plaintiff hereby repeats and realleges each allegation contained above with the same force and effect as though fully set forth herein.

191.    This Count is brought under the New York Labor Law, N.Y. Lab Law §§ 215, et seq. and 190, et seq. ("NY Lab Law"), including § 215(a)(iii), and reference is made to the NY Lab Law in its entirety.

192.    Section 215 of the NY Lab Law states, in relevant part, that an employer shall not:

> discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . (i) because such employee has made a complaint to his or her employer . . . N.Y. Lab. Law § 215(a)(iii).

193.    Defendants' misconduct violated the NY Lab Law.

194.    Plaintiff complained about Defendants' misconduct.

195.    In response to Plaintiff's complaints, Defendants retaliated against Plaintiff with misconduct including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

196.    Plaintiff is entitled to compensation for lost wages, together with lost benefits, liquidated damages, costs, all reasonable attorneys' fees, and prejudgment interest under the NY Lab Law § 215.

## AS FOR THE NINTH CAUSE OF ACTION
## FOR SEX/GENDER DISCRIMINATION & HARASSMENT UNDER THE NYSHRL

197.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

198.   This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

199.   During all times material, Defendant Companies were and are employers within the meaning of the NYSHRL.

200.   At all relevant times, Defendant Hill was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

201.   At all relevant times, Defendant Gilmer was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

202.   At all relevant times, Defendant Karen was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYSHRL.

203.    At all times material, Plaintiff was an employee and an individual within the meaning of the NYSHRL.

204.    At all times material, Plaintiff was and is a person and employee within the meaning of the NYSHRL.

205.    At all times material, Plaintiff was and is a woman and a member of protected classes within the meaning of the NYSHRL.

206.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL with misconduct including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

207.    Upon information and belief, each and every Defendant contributed to the discrimination, was aware of the discrimination, did nothing to resolve the discrimination and/or was complicit in the misconduct.

208.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of race, color and/or ethnicity, as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

209.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

210. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

211. Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

212. Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages, and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE TENTH CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER THE NYSHRL

213. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

214. This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

215. Defendants engaged in unlawful employment practices prohibited by the NYSHRL.

216. Plaintiff complained about Defendants' discrimination and harassment.

217. In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

218. Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYSHRL.

219.     Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e,g., NYSHRL § 296(1) and § 296(6).

220.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

221.     Plaintiff's damages include financial loss, loss of employment and employment benefits, damage to their career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment.

222.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to lost wages and compensatory damages from Defendants under the NYSHRL.

## AS FOR THE ELEVENTH CAUSE OF ACTION
## FOR SEX/GENDER DISCRIMINATION & HARASSMENT UNDER THE NYCHRL

223.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

224.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

225.      During all times material, Defendant Companies were and are employers within the meaning of the NYCHRL.

226.     At all relevant times, Defendant Hill was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire

employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

227.   At all relevant times, Defendant Gilmer was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

228.   At all relevant times, Defendant Karen was involved in the supervision and/or control of workplace conditions, and had the power to carry out personnel decisions and/or to do more than carry out personnel decisions made by others, including the power to hire and fire employees, including Plaintiff, sufficient to be held individually liable for all damages as an "employer" under the NYCHRL.

229.   At all relevant times herein, Plaintiff was and is a person within the meaning of the NYCHRL.

230.   At all relevant times, Plaintiff was and is an employee within the meaning of the NYCHRL.

231.   Defendants subjected Plaintiff to unlawful discrimination and harassment with misconduct, including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

232.   Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

233.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

234.    Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

235.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys' fees and costs.

236.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

237.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## AS FOR THE TWELFTH CAUSE OF ACTION
## FOR SEX/GENDER RETALIATION UNDER THE NYCHRL

238.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

239.    This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

240.    Plaintiff complained about Defendants' discrimination and harassment.

241.    In response to Plaintiff's lawful complaints, Defendants retaliated against Plaintiff, including, but not limited to, calling Plaintiff and other Female staff members "Bitch" and "Muslim Bitch", threating to fire Plaintiff each time she complained, failing to pay Plaintiff wages and overtime compensation, and terminating Plaintiff's employment.

242.    Defendants' conduct, as alleged herein, constitutes retaliation, as defined by the NYCHRL.

243.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

244.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

245.    Each and every Defendant is individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

246.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost benefits; (iii) lost interest; and (iv) attorneys ' fees and costs.

247.    As a further direct and proximate result of each Defendant's unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and

damage to Plaintiff's good name and reputation, emotional distress, mental anguish, emotional pain, emotional suffering, inconvenience and lasting embarrassment and humiliation.

248.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorneys' fees and costs from Defendants under the NYCHRL.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the New York State Human Rights Law, and the New York City Human Rights Law, the FLSA, the New York Lab. Law.

B. Declaring that the Defendants intentionally caused Plaintiff to become emotionally distressed;

C. Awarding damages to Plaintiff for all lost wages and benefits, past and future, resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiffs compensatory damages for mental and emotional distress, and injury to reputation;

E. Awarding Plaintiff punitive damages under the Title VII and the NYCHRL;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action under Title VII and the NYCHRL;

G. An award to Plaintiff for liquidated damages under the FLSA and NYLL,  in the maximum amount permissible by statute given Defendants' willful conduct;

H.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, NY
         December 25, 2018

Respectfully submitted,

LAW OFFICES OF LAURIE E. MORRISON

By:  _____
     Laurie E. Morrison, Esq.
     100 Church Street, 8th Floor
     New York, New York 10007
     (212) 721-4051 (office)
     (646) 651-4821 (fax)
     morrison@lemorrisonlaw.com
     *Attorney for Plaintiff*

**<u>TO:</u>**

GNS Goods and Services
300 Cadman Plaza East, 12th Floor
Brooklyn, NY 11201

George Gilmer PLLC
26 Court Street, Suite #312
Brooklyn, NY 11242

George Hill
C/o GNS Goods and Services
300 Cadman Plaza East, 12th Floor
Brooklyn, NY 11201

George Gilmer
C/o George Gilmer PLLC
26 Court Street, Suite #312
Brooklyn, NY 11242

Karen Doe
C/o George Gilmer PLLC
26 Court Street, Suite #312
Brooklyn, NY 11242

Joshua Doe
C/o George Gilmer PLLC
26 Court Street, Suite #312
Brooklyn, NY 11242