UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
 -----------------------------------------X
```
  MARGARITA GANGADHARAN,

                    Plaintiff,                    **MEMORANDUM & ORDER**

        - against –                               18-cv-7342 (KAM)(MMH)

  GNS GOODS AND SERVICES, et al,

                    Defendants.
```
 -----------------------------------------X
```

**MATSUMOTO, United States District Judge:**

       Plaintiff Margarita Gangadharan ("Plaintiff") commenced
the instant action against Defendants GNS Goods and Services, GNS
Industries Inc., GNS, Gilmer Law Firm PLLC, George Hill, George
Gilmer, Nafeesah "Karen" Hines, and Joshua Niland (together,
"Defendants"), pursuant to Title VII of the Civil Rights Act of
1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the New York State
Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and
the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code
§§ 8-107 *et seq.*, alleging discrimination, harassment, hostile
work environment, and retaliation based on her sex, gender, and
legally protected complaints.  (*See generally* ECF No. 54, Amended
Complaint ("Amended Compl.").)  Plaintiff also alleges failure to
pay regular and overtime wages, and retaliation, in violation of
the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*,
and the New York Labor Laws ("NYLL") Art. 19 §§ 650 *et seq.*  (*See
generally* Amended Compl.)

Presently before the Court is Plaintiff's renewed motion for default judgment, seeking entry of judgment as to liability against Defendants GNS Goods and Services, GNS Industries Inc., and GNS ("GNS Defendants"). (*See* ECF No. 133, Plaintiff's Motion for Default Judgment ("Motion").) For the reasons set forth below, Plaintiff's motion is **GRANTED** against GNS Defendants as to liability for Plaintiff's Title VII and NYSHRL hostile environment and retaliation claims, NYCHRL discrimination and retaliation claims, and violations of the FLSA and the NYLL for failure to pay minimum and overtime wages and for retaliation.

## BACKGROUND

Plaintiff commenced the instant action on December 25, 2018, alleging violations of Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL, and seeking damages, attorney's fees, and costs, with interest. (*See* ECF No. 1, Complaint ("Compl.").) The following alleged facts are taken from the Amended Complaint, the instant motion, and the supporting affirmation, which the Court treats as true for purposes of considering the instant motion. (*See* Amended Compl.; Motion; ECF No. 134, Affirmation in Support of Plaintiff's Motion for Default Judgment ("Affirmation").)

## I.  Factual Background

Defendant GNS Industries Inc. is a domestic corporation d/b/a GNS and GNS Goods and Services. (Amended Compl. ¶¶ 9, 12–13.) At all times relevant to this action, GNS Defendants

2

maintained an office at 300 Cadman Plaza East, 12th Floor, Brooklyn, NY 11201. (*Id.* ¶ 14.) At all times relevant to this action, GNS Defendants employed fifteen or more staff members, had operating revenues in excess of $500,000.00, and engaged in interstate commerce. (*Id.* ¶¶ 16–18.)

On or around January 27, 2017, Plaintiff interviewed with GNS Defendants, which serve as an employment agency. (*Id.* ¶¶ 43–44.) Defendants George Hill and Nafeesah "Karen" Hines, who are GNS Defendants' Director and Operations Manager, respectively, conducted Plaintiff's interview. (*Id.* ¶¶ 44–47.) On or around the same day, Defendant Hines gave Plaintiff wage forms to complete to be hired as a "1099 worker." (*Id.* ¶ 48.) On or around January 31, 2017, Plaintiff was assigned to work for Defendant Gilmer Law Firm PLLC ("Gilmer Law Firm") as a paralegal. (*Id.* ¶¶ 49–50.) At Gilmer Law Firm, Plaintiff worked for Defendant George Gilmer and nonparty Steve Rabiz, who are both attorneys. (*Id.* ¶¶ 51–54)

Plaintiff's hourly wage was around $10.50, and she worked approximately fifty hours about five days a week. (*Id.* ¶¶ 55–56, 62.) GNS Defendants and Gilmer Law Firm (together "Defendant Companies") "classified [Plaintiff] as a 1099 independent contractor," (*id.* ¶ 57), but "[i]n reality, [Plaintiff] was Defendant Companies' employee." (*Id.* ¶ 58.) Defendant Companies set Plaintiff's work schedule, gave her work assignments, and Defendant Hines was one of Plaintiff's direct

3

supervisors.  (*Id.* ¶¶ 59–61.)  Plaintiff used Defendant Gilmer's computer to perform work, and Gilmer Law Firm linked Plaintiff's personal computer to the firm's computer system, which allowed Plaintiff to communicate with clients directly using her personal computer.  (*Id.* ¶¶ 63–65.)

For Plaintiff's first month of work, she worked approximately forty hours per week and was paid $400 in cash for the entire month.  (*Id.* ¶¶ 66–68.)  When Plaintiff asked Defendant Hines "where the rest of her pay was," Hines told her that "she had to work for 1 month without being paid for all weeks that she worked."  (*Id.* ¶¶ 70–71.)  Plaintiff complained that Defendant Companies still owed Plaintiff her earned wages, not including overtime pay.  (*Id.* ¶ 72.)  Around the end of February or beginning of March 2017, Plaintiff had a meeting with Defendants Hill and Hines, during which Defendant Hill told Plaintiff that Defendant Companies could not pay her any more money and that "it was not in the budget that [he had] arranged with Defendant Gilmer."  (*Id.* ¶¶ 73–75.)  Plaintiff complained that she was still owed her earned wages, not including overtime pay, at which Defendant Hill responded that Plaintiff was an at-will employee and could be fired at any time.  (*Id.* ¶¶ 76–77.)

Beginning in or around March 2017 to April 2017, Plaintiff worked over fifty hours per week for Defendant Companies, from 9 a.m. to approximately 8 p.m. or later, for five to six days.

(*Id.* ¶¶ 78–79.)  Defendant Companies paid Plaintiff only $420 in cash per week.  (*Id.* ¶ 80.)  In or around March 2017, Plaintiff told Defendants Hill and Hines that Defendant Companies needed to pay her for all the hours that she worked, (*id.* ¶ 81), to which Defendant Hill responded that "he could not take money out of attorney Rabiz' budget to pay [Plaintiff]" and that New York is an at-will state and she could be fired at any time.  (*Id.* ¶¶ 82, 84.)  Defendant Companies still owe Plaintiff overtime pay for approximately forty hours.  (*Id.* ¶ 90.)

On or around April 15, 2017, Defendant Hines gave Plaintiff a new employment contract, which stated that Plaintiff had been a "W2 employee" since her January 2017 hire date.  (*Id.* ¶¶ 85–86.)  Defendants Hill and Hines told Plaintiff that she owed taxes to Defendant Companies and that Defendant Companies were going to deduct back taxes and other payments from her paychecks.  (*Id.* ¶¶ 87–88.)  Plaintiff complained that Defendant Companies were engaging in illegal activities.  (*Id.* ¶ 89.)

In or around middle of May 2017, Defendant Joshua Niland, one of Defendant Companies' staff members, was having trouble clocking into Defendant Companies' electronic timekeeping system.  (*Id.* ¶¶ 92–93.)  Defendant Niland "started banging on [a] table," and another staff member, Jardana Dahlal, started laughing.  (*Id.* ¶¶ 94–96.)  Niland said to Ms. Dahlah, "Shut the Fuck up, Bitch."

(*Id.* ¶ 97.)   Ms. Dahlal called Defendant Hill on the telephone. (*Id.* ¶ 98.)

On or around the same day, Defendant Hill called Plaintiff into a meeting with him and Defendant Niland, and during the meeting, Defendant Hill stated that Ms. Dahlal probably would not return to work.   (*Id.* ¶¶ 99–104.)   Defendant Hill told Defendant Niland that he would be allowed to come back to work after taking a few days off. (*Id.* ¶ 105.) Plaintiff told Defendant Hill that she was not comfortable working with Defendant Niland due to the way he behaved toward women and that "there was a hostile work environment." (*Id.* ¶¶ 106–07.) Defendant Hill told Plaintiff that New York is an employment-at-will state and that she could be fired at any time. (*Id.* ¶¶ 108–09.)

In or around June 2017, approximately a week and a half after the meeting with Defendants Hill and Niland, Defendant Hill told Plaintiff that a co-worker could call her a "Bitch." (*Id.* ¶ 110.) Defendant Hill said to Plaintiff that calling her a "Bitch" was not discrimination, just "bad words." (*Id.* ¶¶ 111–12.) Defendant Hill also reminded Plaintiff that she could be fired at any time. (*Id.* ¶ 113.)

In or around July 2017, Defendant Companies hired three women for their Summer Youth Employment Program, and one of the three women, Rhonda (last name unknown), was Muslim. (*Id.* ¶¶ 114–15.) Sometime in July 2017, Defendant Hill had a meeting with the

three Summer Youth Employees and Plaintiff, during which Defendant Hill said to the three Summer Youth Employees that being called a "Bitch" is not discrimination. (*Id.* ¶¶ 116–17.) Defendant Hill then looked directly at Rhonda and said that even being called a "Muslim Bitch" is not discrimination. (*Id.* ¶¶ 118–19.) Defendant Hill also stated that "this is not a hostile work environment." (*Id.* ¶ 120.) Plaintiff complained about Defendant Hill's conduct. (*Id.* ¶ 121.)

At or around the end of September 2017, Defendant Hill told Plaintiff to take a couple weeks off from work until her new office placement. (*Id.* ¶ 122.) At that time, Plaintiff, Defendant Hines, and another individual named Michelle (last name unknown) were the only staff members present in the office. (*Id.* ¶ 123.) Hines and Michelle continued to work in the office. (*Id.* ¶ 124.) As of the date of the filing of the Amended Complaint, October 8, 2019, Defendant Companies had not contacted Plaintiff for a new office assignment. (*Id.* ¶ 125.)

## II.  Procedural Background

Plaintiff commenced the instant action on December 25, 2018, after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), dated September 28, 2018. (*See* Compl.; Amended Compl. ¶¶ 37–38.) On October 8, 2019, Plaintiff filed an Amended Complaint, (*see* Amended Compl.), and

7

GNS Defendants and Defendant George Hill[1] filed their Answer on November 12, 2019. (*See* ECF No. 65, Answer.) On February 6, 2020, counsel for GNS Defendants and Defendant Hill moved to withdraw as counsel. (*See* ECF No. 74.) Magistrate Judge Steven M. Gold entered an Order the same day, advising the parties that counsel's motion to withdraw would be heard during the status conference scheduled for February 26, 2020. (Order dated February 6, 2020.) In addition, Judge Gold advised GNS Defendants that as corporate entities, they must be represented by counsel and that their failure to appear through counsel may result in an entry of default judgment against them. (*Id.*) The February 26 conference was rescheduled and held on March 17, 2020, and on that date, Judge Gold granted counsel's motion to withdraw, as well as Defendant Hill's request to stay the proceedings for sixty days for him to retain new counsel on behalf of himself and GNS Defendants. (ECF No. 86, Order dated March 17, 2020.) On June 1, 2020, Judge Gold granted Defendant Hill's request for an extension of time to retain counsel by July 16, 2020. (Order dated June 1, 2020.)

On August 12, 2020, Judge Gold issued an Order that stated, in relevant part, that Plaintiff may seek entry of default judgment against GNS Defendants if they "do not appear through counsel by October 5, 2020 . . . ." (ECF No. 112, Order dated

---

[1] The Amended Complaint alleges that Defendant George Hill is the Director of GNS Defendants. (Amended Compl. ¶ 45.)

August 12, 2020.)  On October 19, 2020, Judge Gold stated that GNS Defendants failed to comply with the Court's August 12, 2020 Order and that Plaintiff may seek default judgment against them.  (ECF No. 114, Order dated Oct. 19, 2020.)

On November 24, 2020, Plaintiff filed a letter requesting that the Court allow Plaintiff to move for default judgment against GNS Defendants without seeking a certificate of default from the Clerk of Court, "since Magistrate Judge Gold already provided the bases and support for the motion."  (ECF No. 119.)  On February 11, 2021, Plaintiff filed a letter seeking to file a renewed motion for default judgment against GNS Defendants, (ECF No. 128), and the Court, on March 3, 2021, reserved decision on Plaintiff's motion in light of the parties' discussions regarding mediation.  (Order dated Mar. 4, 2021.)  On April 1, 2021, the Court found as moot Plaintiff's motion for expedited default judgment, in light of the parties' participation in mediation.  (Order dated Apr. 1, 2021.)  GNS Defendants did not appear at the April 19, 2021 mediation, but Defendant Hill appeared with counsel, who was retained for the limited purpose of participating in the mediation.  (Affirmation ¶ 20.)  The mediation did not result in the resolution of Plaintiff's claims against GNS Defendants and Defendant Hill.  (*Id.* ¶ 21.)

On April 19, 2021, Plaintiff filed a request for a certificate of default against GNS Defendants, which was entered

by the Clerk of Court on April 26, 2021.  (ECF Nos. 131, Request for Certificate of Default; 132, Certificate of Default.)   On August 12, 2021, Plaintiff served and filed the instant motion for default judgment against GNS Defendants, (Motion), and filed an affirmation of service of the motion for default judgment, in compliance with Local Rule 55.2(c).  (ECF No. 136, Affirmation of Service of Motion for Entry of Default Judgment.)

### DISCUSSION

In the instant motion, Plaintiff seeks an entry of default judgment as to liability against GNS Defendants, based on their alleged violations of Title VII, the NYSHRL, the NYCHRL, the FLSA, and the NYLL.   Specifically, Plaintiff alleges sex discrimination, harassment, hostile work environment, retaliation, and failure to pay regular and overtime wages.

## I.   Default Judgment

Under Rule 55 of the Federal Rules of Civil Procedure ("Rule 55"), a party defaults when it "has failed to plead or otherwise defend" in a pending action.  Fed. R. Civ. P. 55(a); *see also Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013).  Entry of default against a defendant, does not, however, automatically entitle a plaintiff to entry of default judgment. *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).   Rather, the Court may enter default judgment on a

plaintiff's motion "if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Id.* (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)).  Thus, "a default is an admission of all well-pleaded allegations against the defaulting party." *S.E.C. v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016) (quoting *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)), *cert. denied*, 578 U.S. 1024 (2016).

"Even if a party appears in a case, if that party by its subsequent actions plainly abandons its defense, including by violating Court orders, such actions can warrant the judgment of default." *E. Freight Ways, Inc. v. E. Motor Freight, Inc.*, No. 02-cv-3138(LTS), 2003 WL 21355486, at *2 (S.D.N.Y. June 11, 2003). *See Koch v. Rodenstock*, 06-cv-6586(BSJ), 2007 WL 9818004, at *3 (S.D.N.Y. Aug. 14, 2007) ("Where, either by its conduct or its direct representations to the court, a defendant demonstrates a clear intention to abandon its defense of an action, the entry of a default judgment against the defendant is proper."); *Trs. of the Paper Prods., Miscellaneous Chauffers, Warehousemen & Helpers Union Local 27 Welfare Tr. Fund & Pension Fund v. J & J Int'l Logistics, Corp.*, No. 12-cv-1475, 2013 WL 5532710, at *2 (E.D.N.Y. Oct. 4, 2013) ("The court may enter a default judgment when the disobedient party has failed to comply with a court order due to

willfulness, bad faith, or any fault, including gross negligence.") (citation omitted).

Furthermore, "where corporate defendants have been ordered to retain counsel and fail to do so, a sanction in the form of striking those defendants' Answers is appropriate." *Allstate Ins. Co. v. Yehudian*, No. 14-cv-4826(JS), 2018 WL 1767873, at *4 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018). *See E. Freight Ways*, 2003 WL 21355486, at *2 (striking the Answer of defendant corporate entity, which abandoned its defense and failed to retain new counsel after the withdrawal of its prior counsel, and granting summary judgment for plaintiff).

When determining whether to enter default judgment against a defendant, courts in this circuit evaluate three factors: the willfulness of the default, the existence of any meritorious defenses, and prejudice to the non-defaulting party if default judgment is denied. *Guggenheim Cap.*, 722 F.3d at 454–55 (citations omitted); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001) (considering same three factors in "deciding whether to relieve [defendants] from default or default judgment") (citations omitted); *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 141 (E.D.N.Y. 2013) (referring to same three factors as "necessary for the entry of a default judgment").

In the instant case, GNS Defendants were properly served with process, (ECF No. 123, Affirmation of Service), appeared in the case through counsel, and filed their Answer to Plaintiff's Amended Complaint. (Answer.)  However, they defaulted willfully by failing to retain new counsel after the withdrawal of their prior counsel, despite repeated warnings from Judge Gold that they could not appear *pro se* as corporate entities and that their continued failure to obtain new counsel would result in an entry of default judgment against them.  (Order dated February 6, 2020 ("Defendants are hereby advised that a corporation, including an LLC, must be represented by counsel"); Order dated March 17, 2020 ("Mr. Hill is advised that, while an individual may appear pro se, a corporation may not").)  GNS Defendants repeatedly ignored the Court's orders and abandoned their defense of this action.  The Court therefore finds that GNS Defendants defaulted willfully and deems the Answer filed on November 12, 2019 stricken as to GNS Defendants.[2]

Moreover, Plaintiff has been litigating the instant action since December 2018, for over three years.  As discussed in detail *infra*, Plaintiff has established her entitlement to a default judgment and should not be prejudiced by a delay in the entry of default judgment.  Finally, in light of GNS Defendants'

---

[2] The Court notes that the Answer is not deemed stricken as to Defendant George Hill, who has continued to participate in his defense in the instant action *pro se*.

willful default and the striking of the Answer as to GNS
Defendants, GNS Defendants have failed to present meritorious
defenses such that entry of default judgment is appropriate. *See*
*Guggenheim Capital*, 722 F.3d at 455-57 (affirming district court's
entry of default judgment where defendant presented no meritorious
defense).

## II.  Discrimination and Hostile Work Environment

### A.  Title VII and NYSHRL

Title VII of the Civil Rights Act of 1964 provides that
"[i]t shall be an unlawful employment practice for an employer .
. . to discriminate against any individual with respect to [her]
compensation, terms, conditions, or privileges of employment,
because of such individual's . . . sex." 42 U.S.C. § 2000e-
2(a)(1). Similarly, the NYSHRL provides that "[i]t shall be an
unlawful discriminatory practice [f]or an employer," on account of
an individual's sex, "to discriminate against such individual in
compensation or in terms, conditions or privileges of employment."
N.Y. Exec. Law. § 296(1)(a). "[C]laims asserted under Title VII
and the NYSHRL are analyzed pursuant to the same standard;
therefore, analysis of identical claims brought by an individual
under both of these laws can be performed in tandem." *E.E.O.C. v.*
*Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013).

Both Title VII and the NYSHRL have been construed to
encompass claims for being required to work in a "discriminatorily

hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal quotation marks and citation omitted).

A plaintiff raising a hostile work environment claim under either Title VII or the NYSHRL must show that "the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Terry v. Ashcroft*, 336 F.3d 128, 147–48 (2d Cir. 2003) (citations omitted). To determine whether a work environment is hostile, a court must look to the surrounding circumstances including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 510 U.S. at 23. The Second Circuit has explained that "[t]his test has objective and subjective elements: the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also

subjectively perceive that environment to be abusive." *Terry*, 336 F.3d at 148 (citation omitted).

Generally, incidents of harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Joseph v. HDMJ Rest.*, 970 F. Supp. 2d 131, 145 (E.D.N.Y. 2013) (internal quotation marks and citation omitted).   However, even an isolated incident can meet the threshold for hostility if it can and does independently "work a transformation of the plaintiff's workplace." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).   Accordingly, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Id.* (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85).   If the discriminatory conduct culminates in a "tangible employment action, such as discharge, demotion, or undesirable reassignment," the employer will be held strictly liable.   *Redd v. New York Div. of Parole*, 678 F.3d 166, 182 (2d Cir. 2012) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)) (internal quotation marks omitted).

As an initial matter, the Court finds that Plaintiff was an employee of GNS Defendants, not an independent contractor, and

therefore is covered by Title VII and the NYHRL.[3]   *See Einsenberg*

*v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir.

2000) ("Title VII and the NYHRL cover "employees," not independent

contractors.").   Courts weigh thirteen factors articulated by the

Supreme Court in *Community for Creative Non-Violence v. Reid*, 490

U.S. 730 (1989), to determine whether a hired party is an employee.

These thirteen factors are:

> [1] the hiring party's right to control the manner and
> means by which the product is accomplished . . . [;][2]
> the   skill   required;   [3]   the   source   of   the
> instrumentalities and tools; [4] the location of the
> work; [5] the duration of the relationship between the
> parties; [6] whether the hiring party has the right to
> assign additional projects to the hired party; [7] the
> extent of the hired party's discretion over when and how
> long to work; [8] the method of payment; [9] the hired
> party's role in hiring and paying assistants; [10]
> whether the work is part of the regular business of the
> hiring party; [11] whether the hiring party is in
> business; [12] the provision of employee benefits; and
> [13] the tax treatment of the hired party.

*Einsenberg*, 237 F.3d at 114 (quoting *Reid*, 490 U.S. at 751–52).

In balancing the *Reid* factors, courts must weigh only those factors

that are relevant, and "[t]hough no single factor is dispositive,

the 'greatest emphasis' should be placed on the first factor—that

is, on the extent to which the hiring party controls the 'manner

and means' by which the worker completes his or her assigned

tasks."   *Id.*   The Court notes that the facts that would allow it

---

[3] "[T]he NYCHRL covers some non-employees" such as "interns, freelancers and
independent contractors."   *Areu v. Fox News Network, LLC*, 20-cv-8678(RA), 2021
WL 4124226, at *10 (S.D.N.Y. Sept. 9, 2021).

to weigh many of the foregoing factors are simply not before the Court. Nevertheless, based on Plaintiff's allegations that GNS Defendants hired and fired her, (*id.* ¶¶ 44–47, 122, 125), set her work schedule and gave her work assignments, (*id.* ¶¶ 59–60), determined the rate, timing, and method of her payment, (*id.* ¶¶ 67, 80), and gave Plaintiff a new employment contract on or around April 15, 2017 stating that Plaintiff was "a W2 employee," retroactive to her January 2017 hiring date, (*id.* ¶¶ 85–86), the Court finds that Plaintiff was an employee within the meaning of Title VII and the NYSHRL.

Plaintiff alleges sex and gender discrimination and hostile work environment based on: (1) the May 2017 incident when Defendant Niland called Ms. Dahlal a "Bitch," (Amended Compl. ¶ 97); (2) the meeting with Defendants Niland and Hill and Plaintiff, called by Defendant Hill shortly after the May 2017 incident, during which Hill stated that Ms. Dahlal, who was not at the meeting, probably would not return to work and that Defendant Niland would be allowed to come back after a few days off from work, (*id.* ¶¶ 99–105); (3) the June 2017 conversation between Plaintiff and Defendant Hill, during which Hill told Plaintiff that a co-worker could call her a "Bitch" and that being called so is not discrimination, (*id.* ¶¶ 110–12); and (4) the July 2017 meeting called by Defendant Hill with Plaintiff and the Summer Youth Employees, during which Hill stated that being called a

"Bitch" or even a "Muslim Bitch" is not discrimination, and that "this is not a hostile work environment." (*Id.* ¶¶ 116–20).

The Court finds that Plaintiff has sufficiently alleged hostile work environment under Title VII and the NYSHRL. Though Plaintiff does not allege that any of the comments were made to her directly, the allegations regarding Defendants Niland's and Hill's conduct are sufficient to demonstrate disparate treatment based on sex that was pervasive enough to render the conditions of employment hostile for the female employees of GNS Defendants. Specifically, Defendant Hill's reprimand of Ms. Dahlal for reporting the use of an offensive sex-related profanity by a male employee while not reprimanding the male employee, telling other employees that Ms. Dahlal would no longer be employed but that Mr. Niland would be, telling Plaintiff that she was an "at-will" employee who could be terminated when she complained, and the subsequent comments by Defendant Hill to Plaintiff and the Summer Youth Employees downplaying the use of the same profanity alone or in combination with religious belief, demonstrate Defendant Hill's and, in turn, GNS Defendants' complicity in encouraging rather than discouraging the use of the word and the disparate treatment of women.

Though this Court recognizes that Title VII is not a "general civility code," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations

19

omitted), and is not applicable to "the sporadic use of abusive language, gender-related jokes, and occasional teasing," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted), courts must "look[ ] at all the circumstances" surrounding the complained conduct to determine whether a work environment is hostile or abusive. *Redd*, 678 F.3d at 175. Here, the Court finds that a reasonable jury could conclude that the combination of the gender-based verbal abuse, GNS Defendants' complicity in and encouragement of it, and the disparate treatment of Ms. Dahlah was sufficiently "'severe or pervasive enough to create an objectively hostile or abusive work environment.'" *Terry*, 336 F.3d at 148 (citation omitted).

**B.   NYCHRL**

"'The New York City Human Rights Law was intended to be more protective than [its] state and federal counterpart.'" *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) (quoting *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006)).

To state a claim for gender discrimination under the NYCHRL, a "plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (1st Dep't 2009)). "Indeed, the challenged conduct

need not even be tangible (like hiring or firing)." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 40).  Furthermore, the NYCHRL does not distinguish between discrimination and hostile work environment claims; rather, both are governed by N.Y.C. Admin. Code § 8-107(1)(a); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) ("Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims.") (citation omitted).  "Employers may only avoid liability under the NYCHRL for conduct that results in an employee being treated less well because of her gender, when the conduct complained of constitutes nothing more than petty slights and trivial inconveniences." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 260 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

In the instant action, because Plaintiff has adequately pleaded a claim for hostile work environment under the NYSHRL, she has also done so under the NYCHRL. *See Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 48 (S.D.N.Y. 2009) (allegations that successfully state a claim under the NYSHRL "[a] fortiori . . . state[s] a claim under the NYCHRL," which is more liberal than either its state or federal counterpart) (citation omitted).

**III. Retaliation**

    **A.   Title VII and NYSHRL**

       The standards for evaluating retaliation claims are identical under Title VII and the NYSHRL.'" *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 454 (E.D.N.Y. 2013) (citations omitted).  Title VII provides that it is unlawful for an employer "to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).  Similarly, the NYSHRL makes it an unlawful discriminatory practice for an employer to "expel or otherwise discriminate against any person because [she] has opposed any practices forbidden under this article . . . ."  N.Y. Exec. Law § 296(1)(e).  "To make out a prima facie case of retaliation, a plaintiff must make four showings: that '(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (citation omitted).

       A protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 188 (E.D.N.Y. 2005) (quoting *Cruz*, 202 F.3d at 566).  A plaintiff need not file a

formal complaint to engage in a protected activity; paradigmatic examples of protected activities include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of coworkers who have filed formal charges." *Cruz*, 202 F.3d at 566 (citation omitted).

To demonstrate an adverse employment conduct on the part of the employer in the retaliation context, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, [meaning] it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Young v. Town of Islip*, No. 13-cv-4713(ADS), 2017 WL 5468752, at *4 (E.D.N.Y. Nov. 13, 2017) (quoting *Burlington N.*, 548 U.S. at 68). Finally, a causation connection can be established "*indirectly* by showing that the protected activity was followed closely by discriminatory treatment . . . ." *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991) (internal quotation marks and citation omitted).

In the instant action, Plaintiff has alleged that after the May 2017 incident when Defendant Niland called Ms. Dahlah a "Bitch," Plaintiff complained to Defendant Hill that she did not feel comfortable working with Niland due to the way he behaved toward women and about the hostility against women in the workplace. (Amended Compl. ¶¶ 106—07.) According to Plaintiff,

Defendant Hill responded by telling Plaintiff that New York is an employment-at-will state and that she could be fired at any time. (*Id.* ¶¶ 108—09.) Plaintiff also alleged that Defendant made it a point to state to Plaintiff, approximately a week and a half after the May 2017 incident, that being called a "Bitch" by a coworker is not discrimination and to remind her, again, that she could be fired at any time. (*Id.* ¶¶ 110—13.) Furthermore, Plaintiff alleged that in or around July 2017, Defendant Hill told a group of female employees, including Plaintiff, that being called a "Bitch" or even a "Muslim Bitch" is not discrimination and that "this is not a hostile work environment." (*Id.* ¶¶ 114—20.) Plaintiff alleges that she complained about Defendant Hill's conduct at the July 2017 meeting. (*Id.* ¶ 121.)

The Court finds that Plaintiff has sufficiently alleged that: (1) she engaged in protected activities by making verbal complaints to Mr. Hill about the treatment of women in the workplace; (2) GNS Defendants were aware of Plaintiff's protected activities because the complaints were made to Defendant Hill, GNS Defendants' Director; (3) GNS Defendants took an adverse employment action, terminating Plaintiff indirectly by not giving her a new office placement; and (4) a causal connection existed between Plaintiff's protected activities and her termination, as demonstrated by Defendant Hill's numerous threats that Plaintiff could be fired at any time in response to her complaints about the

hostile work environment and use of profanity against female
employees. *See Stathatos v. Gala Resources, LLC*, No. 06-cv-
13138(RLC), 2010 WL 2024967, at *12 (S.D.N.Y. May 21, 22010)
(denying defendants' motion for summary judgment on plaintiff's
Title VII retaliation claim, reasoning that though defendants
"articulate[d] a legitimate, non-retaliatory reason for
[plaintiff's] discharge . . . in light of [a] blatant threat to
fire [plaintiff by a senior founder and owner of defendant
employer] for complaining about putative discrimination, it does
not quiet all doubts about whether retaliatory animus influenced
defendants' decision.").

        Here, by their willful default, GNS Defendants, whose
Answer was deemed stricken by the Court, have failed to proffer
any non-retaliatory reason for terminating Plaintiff, and the
approximately two-month proximity between Plaintiff's last
protected activity and her termination provide a factual basis to
find that the adverse employment action was taken in retaliation
for Plaintiff's protected activity. *See Gorzynski v. JetBlue
Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court
has not drawn a bright line defining, for the purposes of a prima
facie case, the outer limits beyond which a temporal relationship
is too attenuated to establish causation, we have previously held
that five months is not too long to find the causal relationship.")
(citation omitted).

**B.    NYCHRL**

A plaintiff can assert a retaliation claim under the NYCHRL by alleging that "she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in" protected activity. *See Mihalik*, 715 F.3d at 112 (citations omitted). As with Title VII and NYSHRL, "the NYCHRL require[s] a causal connection between an adverse act and a protected activity to prove a retaliation claim." *Dudley v. N.Y.C. Hous. Auth.*, No. 12-cv-2771(ADS), 2014 WL 5003799, at *25 (S.D.N.Y. Sept. 30, 2014). Unlike its federal and state law counterparts, however, "a plaintiff is not required to show, 'a material adverse action' under the NYCHRL." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 394 (S.D.N.Y. 2019). In short, because Plaintiff's allegations of retaliation meet the higher pleading thresholds under Title VII and NYSHRL, Plaintiff's claim also meets the requirements of the NYCHRL. *See Hagan v. City of New York*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014) ("[T]he city law grants employees broader protections than its federal and state counterparts.").

**IV. Failure to Pay Earned and Overtime Wages**

    **A.    FLSA**

        **1.    Employment Relationship**

To establish a claim under the FLSA, a plaintiff must show that there was an employment relationship between the plaintiff and the defendant as defined by the FLSA. *See Lopic v. Mookyodong Yoojung Nakjie, Inc.*, No. 16-cv-4179(KAM), 2017 WL 10845064, at *3 (E.D.N.Y. Sept. 30, 2017). The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The Second Circuit has adopted a multi-factor test based on "economic reality" to determine whether an employment relationship exists between the plaintiff and the defendant. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013). The test asks whether the alleged employer-defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled his work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id*. at 105 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). The test looks at the totality of the circumstances, and no individual factor is dispositive. *Id*. at 105.

Plaintiff has alleged that she was GNS Defendants' employee within the FLSA's definitions. (Amended Compl. ¶ 58.) Specifically, Plaintiff alleged that was hired in January 2017 by

GNS Defendants after interviewing with Defendants Hill and Hines and that she was terminated indirectly in or around September 2017 when GNS Defendants failed to provide Plaintiff her next office assignment. (*Id.* at ¶¶ 43–50, 122, 125.) Additionally, Plaintiff alleged that GNS Defendants, together with Defendant Law Firm PLLC, set her work schedule and gave her work assignments. (*Id.* ¶¶ 59–60.) Plaintiff also alleged that GNS Defendants determined the rate, timing, and method of her payment, paying her in cash on a weekly basis (except for the first month when she was given approximately a week's pay for the entire month) without overtime payment for overtime hours worked. These allegations are sufficient for the Court to find an employment relationship within the meaning of the FLSA to impose liability on GNS Defendants.

### 2.   **Non-exempt Employee Status**

The FLSA further requires that the plaintiff-employee does not fall under any of its exemptions. The FLSA does not extend minimum wage and overtime protections to "any employee employed in bona fide executive, administrative, or professional capacity . . . or in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). Whether a plaintiff-employee falls under such exemptions is a question of law. *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012). Here, Plaintiff qualifies neither as an administrative nor a professional employee. *See Sethi v. Narod*, 974 F. Supp. 2d 162, 181–82 (E.D.N.Y. 2013) (noting

that "'[t]he first requirement for both the administrative and professional employee exemptions is a salary requirement.'"); 29 C.F.R. § 541.600(a) ("To qualify as an exempt executive, administrative or professional employee under [29 U.S.C. § 213(a)(1)], an employee must be compensated on a salary basis at a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region.  As of December 1, 2016, and until a new rate is published in the Federal Register by the Secretary, such an employee must be compensated on a salary basis at a rate per week of not less than $913. . . .") (subsequently amended on January 1, 2020).  Plaintiff has alleged that she was paid $420 in cash weekly and that she was paid $400 in cash total for her first month of work.  (Amended Compl. ¶¶ 68–69, 78–80.)  Therefore, the Court finds that Plaintiff was a non-exempt employee who was not paid on a salary basis and was paid less than $913 per week.

### 3.  Interstate Commerce Requirement

In addition, the FLSA requires that the plaintiff-employee is either (1) "engaged in commerce or the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce."[4]  29 U.S.C.

---

[4] For the purposes of the FLSA, "commerce" is defined as interstate or international commerce.  29 U.S.C. § 203(b) (defining "commerce," in relevant part, as "commerce . . . among the several States or between any State and any place outside thereof"); *see Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) (explaining interstate commerce requirement).

§§ 206(a), 207(a).  To be an "enterprise engaged in commerce," the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) "employees handling, selling or otherwise working on goods or materials that have been moving in or produced for commerce by any person."   29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see Valdez v. H & S Rest. Operations, Inc.*, No. 14-cv-4701(SLT), 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).

In the instant case, Plaintiff alleges the statutory requirements in her complaint without providing specific examples of interstate or international commerce.  (*See* Amended Compl. ¶¶ 17–18.)   Nevertheless, Plaintiff's allegations suffice to prove that GNS Defendants are an enterprise engaged in interstate commerce.   Based on Plaintiff's factual allegations that GNS Defendants "had gross operating revenues in access of $500,000.00," and given GNS Defendants' failure to appear and defend, the Court can reasonably infer that at least some of the equipment, goods, materials, and supplies used by GNS Defendants' employees have moved or engaged in interstate or international commerce.   *See Klimchak v. Cardrona, Inc.*, No. 09-cv-4311(MKB), 2014 WL 3778964, at *5 (E.D.N.Y. July 31, 2014) ("[S]everal courts in this district have inferred FLSA enterprise coverage based on the nature of the defendant employer's business, notwithstanding

similar pleading deficiencies.") (collecting cases). Accordingly, the Court finds that GNS Defendants are an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

**B.   NYLL**

"The NYLL is the state analogue to the federal FLSA. Although the NYLL does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales, it otherwise mirrors the FLSA in most aspects." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-cv-1695(ARR), 2015 WL 1529653, at *4 (citing *Chun Jie Yun v. Kim*, No. 07-cv-1236(DLI), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008)). An employee is entitled to relief under New York law if she "is paid by his or her employer less than the wage to which he or she is entitled . . . ." N.Y.L.L. § 663(1).

**C.   Liability Under FLSA and NYLL**

An employee seeking to recover unpaid wages "has the burden of proving that he performed work for which he was not properly compensated." *Jiao v. Chen*, No. 03-cv-165(DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)) (internal quotation marks omitted). An employer is required by federal and state law to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c); *see also* 12 N.Y.C.R.R. §

142-2.6(a)  ("[e]very  employer  shall  establish,  maintain  and preserve  for  not  less  than  six  years,  weekly  payroll  records"). In  the  case  of  a  default  judgment,  the  "defaulting  defendant deprive[s]  the  plaintiff  of  the  necessary  employee  records required  by  the  FLSA,  thus  hampering  [the]  plaintiff's  ability  to prove  his  damages"  and,  consequently,  "a  plaintiff  may  meet  his burden  of  proof  by  relying  on  recollection  alone  to  establish  that he  performed  work  for  which  he  was  improperly  compensated." *Kernes v. Global Structures, LLC*,  No.  15-cv-659(CM),  2016  WL  880199,  at *6  (S.D.N.Y.  Mar.  1,  2016)  (internal  quotation  marks  and  citations omitted)  (alterations  in  original);  *Maldonado v. La Nueva Rampa, Inc.*,  No.  10-cv-8195(LLS),  2012  WL  1669341,  at  *3  (S.D.N.Y.  May 14,  2012).

**1.    GNS Defendants are Liable for Failing to Pay Plaintiff Minimum Wages During the First Month**

Where,  as  here,  a  defendant  employer  defaults,  a plaintiff's  recollection  and  estimates  of  hours  worked  are presumed  to  be  correct.  *See Grochowski v. Phoenix Const.*,  318 F.3d  80,  87–88  (2d  Cir.  2003).  The  FLSA  requires  employees  to  be compensated  at  a  minimum  hourly  rate  for  each  hour  that  they  work. *Rodriguez v. Queens Convenience Deli Corp.*,  No.  09-cv-1089(KAM), 2011  WL  4962397,  at  *2  (E.D.N.Y.  Oct.  18,  2011)  (citing  29  U.S.C. §  206(a)).  New  York  law  has  the  same  requirement.  N.Y.L.L.  § 652(1).

32

"[A] plaintiff may recover under the statute which provides the greatest amount of damages." *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-cv-1089(KAM), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). During the relevant periods, the NYLL provided a higher minimum wage rate than the FLSA, and therefore Plaintiff will be entitled to recover according to the NYLL minimum wage rate. *Compare* N.Y.L.L § 652(1) (state minimum wage was $11.00 per hour on or after December 31, 2016), *with Jacome v. Optical 49, Inc.*, No. 20-cv-02615(DG), 2021 WL 3375134, at *9 (E.D.N.Y. July 9, 2021) ("The federal minimum wage has been $7.25 since July 24, 2009.") (citation omitted), *report and recommendation adopted*, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021).

During Plaintiff's employment with GNS Defendants in 2017, the state minimum wage was $11.00 per hour. *See* N.Y.L.L. § 652(1). Plaintiff represents that for the first month of work, she worked approximately forty hours per week and was paid $400 in cash for the entire month. (Amended Compl. ¶¶ 66–68.) Based on these allegations, Plaintiff's hourly wage for that month was approximately $2.50 ($400 divided by 140 hours), which fell below the minimum wage required by New York law. Plaintiff may recover unpaid wages for forty hours per week at the hourly rate of $11.00.

   2.   **GNS Defendants are Liable for Failing to Pay
        Plaintiff Overtime Wages**

        Both federal and state law require that employers pay
employees one and one-half times their "regular rate" for any hours
worked in excess of forty hours in a given week.   29 U.S.C. §
207(a); 12 N.Y.C.R.R. § 142-2.2; *see also Luna v. Gon Way Constr.,
Inc.*, No. 16-cv-1411(ARR), 2017 WL 835321, at *10 (E.D.N.Y. Feb.
14, 2017), *report and recommendation adopted*, 2017 WL 835174
(E.D.N.Y. Mar. 2, 2017); *Kolesnikow v. Hudson Valley Hosp. Ctr.*,
622 F. Supp. 2d 98, 118–20 (S.D.N.Y. 2009).   "[A] plaintiff must
provide sufficient detail about the length and frequency of unpaid
work in order to support a reasonable inference that he or she
worked more than forty hours in a given week."   *Luna*, 2017 WL
835321, at *11 (internal quotation marks and citations omitted).
To state a plausible overtime claim under the FLSA, Plaintiff must
provide some factual context supporting her claim that she was
uncompensated for time worked in excess of forty hours.   *See Lundy
v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114
(2d Cir. 2013).   A plaintiff, however, does not need to actually
estimate the number of hours she worked in "some or all workweeks."
*Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)
(internal quotations omitted).   The same standard applies to
stating an overtime claim under the NYLL.   *See Rocha v. Bakhter
Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 351 (E.D.N.Y. 2014)

("[T]he NYLL adopts th[e] same standard . . . [as the] FLSA definition of overtime into the [New York Labor Law]") (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013)) (alterations in the original).

In the instant case, Plaintiff has alleged that her regular wage was approximately $10.50 per hour and that she worked over fifty hours per week beginning in or around March 2017 to April 2017 but was paid only $420 in cash per week. (*Id.* ¶¶ 55, 78–80.) According to Plaintiff, she is owed overtime pay for approximately forty hours. (*Id.* ¶ 90.) Accepting as true Plaintiff's allegations, the Court finds that Plaintiff has sufficiently pleaded GNS Defendants' failure to pay her overtime wages and is owed forty hours of overtime at the one and a half times her regular rate.

### 3. GNS Defendants are Liable for Retaliation under the FLSA and NYLL

THE FLSA prohibits employers from discharging or otherwise retaliating against employees who seek enforcement of its provisions. *See* 29 U.S.C. § 215(a)(3) ("[I]t shall be unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter"); *see also Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). FLSA retaliation claims are

analyzed under the three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802—03 (1973). *Mullins*, 626 F.3d at 53. Hence, "a plaintiff alleging retaliation under FLSA must establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Id.* If the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employment action. *Id.* If the defendant meets this burden, the plaintiff must then produce sufficient evidence to permit a reasonable juror to find that the defendant's proffered explanation was pretextual, and that more likely than not, retaliation was the real reason for the employment action. *Id.* at 53—54.

"[A]n employee may premise [an FLSA] retaliation action on an oral complaint made to an employer, so long as . . . the complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). "NYLL § 215 and FLSA §

36

15(a)(3) are 'nearly identical' provisions." *Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 27 (E.D.N.Y. 2020) (quoting *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.18 (S.D.N.Y. 2008)). *See also Ozawa v. Orsini Design Assocs., Inc.*, No. 13-cv-1282(JPO), 2015 WL 1055902, at *9 n.10 (S.D.N.Y. Mar. 11, 2015) ("The elements of a retaliation claim under the NYLL are comparable to those of a FLSA retaliation claim.").

Here, Plaintiff has alleged that when she made complaints, on two occasions, to Defendants Hill and Hines that she was not being paid for all the hours she worked, Defendant Hill responded, among others, by stating that New York is an at-will state and that she could be fired at any time. (*Id.* ¶¶ 76–77, 81–82, 84.) The temporal period between Plaintiff's termination and her last protected activity is greater for Plaintiff's FLSA and NYLL retaliation claims, approximately six months, compared to that for Plaintiff's Title VII, NYSHRL, and NYCHRL retaliation claims. Nevertheless, the Court notes that the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a [protected activity] and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). The Court thus finds that the temporal relationship here is not too attenuated, especially in light of

the ongoing threats of termination made by Defendant Hill to Plaintiff, such that it may be inferred that the adverse employment action was in response to Plaintiff's protected activity. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory act suggested causal relationship).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's renewed motion for default judgment is granted as to liability against GNS Defendants for Plaintiff's Title VII and NYSHRL hostile environment and retaliation claims, NYCHRL discrimination and retaliation claims, and violations of the FLSA and the NYLL for failure to pay minimum and overtime wages and for retaliation. The Court notes that the damages assessment shall be made once liability is determined as to the remaining Defendants in the action, Defendants George Hill, Nafeesah "Karen" Hines, and Joshua Niland.[5] Plaintiff's counsel shall serve a copy of this Memorandum and Order on GNS Defendants and all remaining Defendants, and note service on the docket.

The remaining parties shall complete discovery under the supervision of Magistrate Judge Marcia H. Henry and engage in good faith settlement discussions.

**SO ORDERED.**

Dated:   March 18, 2022
         Brooklyn, New York

                                        /s/
                                   **KIYO A. MATSUMOTO**
                                   United States District Judge

---

[5] The Court notes that on September 24, 2021, Plaintiff and Defendants George Gilmer and Gilmer Law Firm filed a stipulation of dismissal dismissing Defendants Gilmer and Gilmer Law Firm from this action, with prejudice. (ECF No. 137, Stipulation of Dismissal.)